### Zenas Fulton and others, Plaintiffs in error, v. Morgan M'Affee, Defendant in error.

The High Court of Errors and Appeals of the state of Mississippi, on a writ of error to the Circuit Court of Washington County, Mississippi, confirmed a judgment of the Circuit Court, by which a title to land set up on an act of Congress of the United States, was held valid; thus construing the act of Congress in favour of the party claiming a right to the land, under the act. The party against whom the decision of the Court of Appeals was given, prosecuted a writ of error to the Supreme Court of the United States. The writ of error was dismissed, the Court having no jurisdiction.

In order to give the Supreme Court of the United States jurisdiction in such cases, it is not sufficient that the construction of the act of Congress on the validity of the act on which the claim was founded, was drawn in question. It must appear, also, that the decision was against the right claimed. The power of the Supreme Court is carefully defined and restricted by the judiciary act of 1789; and it is the duty of this Court not to transcend the limits of the jurisdiction conferred upon it.

IN error to the High Court of Errors and Appeals, of the state of Mississippi.

The case is fully stated in the opinion of the Court.

Mr. Coxe, for the defendant, moved to dismiss the writ of error, on the ground that the Court had no jurisdiction of the case. The motion was opposed by Mr. Crittenden, for the plaintiffs in error.

Mr. Chief Justice Taney delivered the opinion of the Court.

This case is brought up by writ of error from the High Court of Appeals of the state of Mississippi. A motion was made at the last term to dismiss the case, upon the ground that this Court has not jurisdiction under the twenty-fifth section of the act of 1789; but the argument upon the motion was not heard until about the close of the session, when many other cases were pressing upon the attention of the Court; and it was therefore held under advisement until the present term.

It appears that an action of ejectment was brought for certain lands in the state of Mississippi, by Morgan M'Affee, to which the present plaintiffs in error appeared as defendants; and upon

N 2

the trial, the verdict and judgment were in favour of M'Affee The defendant in that suit thereupon appealed to the High Court of Appeals, where the judgment of the inferior Court was affirmed.

A brief statement will show the points that arose in the State Court, so far as they are material upon the question of jurisdiction.

By the act of Congress of April 20, 1832, entitled "an act for the relief of Jefferson College, in the state of Mississippi," the trustees of the college were authorized to relinquish certain lands which had been reserved for the use of the college, and to locate or enter other lands in lieu of them. The fourth section of this law authorized the college to transfer the right of location or entry conferred by the act; and declared that the assignee should be entitled to receive a certificate from the register of the proper land office, which should be "accounted and held as valid and complete as if a patent had issued therefor."

At the trial of the ejectment, M'Affee, the lessor of the plaintiff, made title under a certificate dated August 18, 1834, issued to him as assignee of Jefferson College, by virtue of this act of Congress. The certificate was read in evidence, subject to all legal exceptions; the defendants in the case giving notice at the time, that, in the progress of the trial, they would offer evidence that the said certificate was purchased fraudulently by the said M'Affee. The defendants then, for the purpose of showing that no patent had ever issued, by virtue of the said certificate, offered in evidence six patents, which had been issued on pre-emption certificates; and which it was admitted covered the land embraced by the certificate of M'Affee. These patents were granted in 1837 and 1838 to different persons, under whom the defendants claimed the possession. And in order to show that the said certificate of M'Affee was fraudulently obtained, they offered to prove that the parties to whom the patents above mentioned issued, were entitled to the benefit of pre-emption in the said land, under the acts of Congress then in force, before the lessor of the plaintiff obtained his certificate: that they were present at the land office, with money to enter and pay for the same; and offered to pay, in the presence of M'Affee, on the day he obtained his certificate, and before he obtained it; and that the defendants had

acquired possession of the lands afterwards, when these pre-emption claims had been allowed. This testimony was objected to on tne part of the lessor of the plaintiff, and the Court refused to permit it to go to the jury, upon the ground that the certificate could not be impeached at law for fraud.

The defendants then offered to prove by the register of the land office, that the pre-emption claims before mentioned were finally allowed and paid for, and that the patents produced by the defendants, issued upon them; and that the commissioner of the general land office had rejected M'Affee's certificate, and refused to issue a patent upon it. This evidence was also rejected.

The defendants then moved the Court to exclude the said certificate, as evidence of legal title in the lessor of the plaintiff; but the motion was overruled.

Exceptions were taken to these opinions, and the case was carried to the High Court of Errors and Appeals; where the judgment of the inferior Court was affirmed as herein before mentioned.

From this statement of the case, it will appear, that the only right drawn in question was that claimed by M'Affee under his certificate. If that certificate was a good legal title, it was elder and therefore superior to the legal title derived under the patents produced by the defendants.

The testimony offered to show that the certificate was fraudulently obtained, was intended to impeach the title M'Affee claimed under it; and the objection to its legal effect was made for the same purpose. The patents given in evidence by the defendants were not offered for the purpose of showing the legal title out of the lessor of the plaintiff; nor for the purpose of deriving a legal title under them older than the plaintiff's certificate, by virtue of the act of June 19, 1834, mentioned in the exception, or any other law of the United States; for it is stated in express terms that they were offered in order to show that no patent had ever been issued on M'Affee's certificate. They were intended, therefore, with the other evidence, to prove that this certificate was fraudulently and improperly obtained; that its authority had been denied by the commissioner of the general land office; and consequently, that it did not confer on the lessor of the plaintiff a valid legal title, upon which he could recover in ejectment.

[Fulton et al. v. M'Affee.]

These being the only questions raised in the State Court, and being there decided in favour of the right claimed by M'Affee, under the act of 1832, we have no authority to revise the judgment.  In order to give this Court jurisdiction under the twenty-fifth section of the act of 1789, it is not sufficient that the construction of the act of Congress, or the validity of the right claimed by M'Affee, was drawn in question, and decided by the State Court.  It must also appear that the decision was against the right claimed.

We do not mean to express any opinion as to the rights in contest between the parties.  The question before us concerns merely the jurisdiction of this Court, upon the case as it is now presented; and it is, therefore, not material to the present inquiry whether the parol evidence offered by the defendants was or was not properly rejected.  For the decision on that point, as well as on the question as to the legal effect of the certificate having been in favour of the right claimed; this Court is not authorized to examine into the correctness of the judgment given by the State Court.  The power of the Supreme Court, in this respect, is carefully defined and restricted by the act of 1789; and it is our duty not to transcend the limits of the jurisdiction conferred upon it.  The writ of error must, therefore, be dismissed, for want of jurisdiction.